JAMES L. DENNIS, Circuit Judge,
concurring in part, dissenting in part, and concurring in the judgment:
I concur in all but part II.A.1 of the majority’s opinion. I respectfully dissent from the majority’s reversal of the district court’s finding that SB 14 was enacted with a racially discriminatory purpose because, in my view, we are bound to affirm that factual finding. The majority opinion erroneously assigns legal errors to the district court and, in disturbing the district court’s finding of discriminatory purpose, fails to adhere to the proper standard of review and engages in improper reweighing of the evidence.
The district court’s determination that SB 14 was enacted with a racially discriminatory purpose or intent is a finding of fact. See Rogers v. Lodge, 458 U.S. 613, 623, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982). In reviewing the factual findings of the district court, this court is bound by the “clearly erroneous” standard of Federal Rule of Civil Procedure 52(a). Id. at 622-23, 102 S.Ct. 3272 (citing Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). “That Rule recognizes and rests upon the unique opportunity afforded the trial court-judge to evaluate the credibility of witnesses and to weigh the evidence.” Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 856, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). “Because of the deference due the trial judge, *320 unless an appellate court is left with the ‘definite and firm conviction that a mistake has been committed/ it must accept the trial court’s findings.” Id. at 855, 102 S.Ct. 2182 (quoting United States v. United States Gypsum, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Thus, if the trial court’s account of the evidence is “plausible in light of the record viewed in its entirety,” the appellate court must accept its findings. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
The majority does not contend that the district court’s finding of discriminatory purpose is implausible in light of the record as a whole. Indeed, the majority opinion itself appears to acknowledge that there is a considerable amount of evidence to support this finding. See, e.g., Maj. Op. at 234-41 (discussing part of the voluminous evidence that tends to show that SB 14 was enacted with a discriminatory purpose). Nevertheless, the majority reverses the district court because of purported legal errors, specifically, the district court’s reliance on evidence that, in the majority’s view, is “infirm.”
Of course, Rule 52(a) does not apply to conclusions of law, and the district court’s findings may be set aside if they rest on an erroneous view of the law. Pullman-Standard, 456 U.S. at 287, 102 S.Ct. 1781. In my view, however, examination of the district court’s opinion reveals no legal error and no reliance on infirm evidence. Instead of correcting legal errors, the majority opinion mistakenly lapses into an independent reweighing of the evidence and encroaches upon the district court’s domain, in violation of Rule 52(a)’s clear instruction. See Inwood Labs., 456 U.S. at 856, 102 S.Ct. 2182; Rogers, 458 U.S. at 622-23, 102 S.Ct. 3272.
First, the majority faults the district court for relying “too heavily” on evidence of Texas’s less recent history of enacting discriminatory voting measures, citing Shelby Cty., Ala. v. Holder, — U.S.-, 133 S.Ct. 2612, 186 L.Ed.2d 651 (2013) and McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Maj. Op. at 230-31. The historical background of an official decision is “one evidentiary source for proof of intentional discrimination, particularly if it reveals a series of official actions taken for invidious purposes.” Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Following the Supreme Court’s guidance in Arlington Heights, the district court considered, inter alia, evidence of Texas’s persistent history of discriminatory practices in the realm of voting rights, beginning with the inception of all-white primaries in 1895 and progressing with the continual invention of new methods designed to curb minority voting each time a prior method was blocked by the courts, including poll taxes, literacy and secret ballot restrictions, voter re-registration and purging, and racial gerrymandering of electoral districts. See Veasey v. Perry, 71 F.Supp.3d 627, 633-36 (S.D. Tex. 2014). The district court found that “[i]n each instance, the Texas Legislature relied on the justification that its discriminatory measures were necessary to combat voter fraud.” Id. at 636. Contrary to the majority opinion’s suggestion, neither Shelby County nor McClesky limits courts’ consideration of such historical evidence in assessing discriminatory-purpose claims or proscribes the analysis employed by the district court here.
Shelby County concerned only the coverage formula for the preclearance requirement under section 5 of the Voting Rights Act, and the Supreme Court explicitly stated that its decision “in no way affects the permanent, nationwide ban on racial discrimination in voting found in *321 § 2.” 133 S.Ct. at 2629; accord League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 242-43 (4th Cir.2014) (holding in a section 2 case that the district court abused its discretion where it “failed to adequately consider North Carolina’s history of voting discrimination” and instead “parroted the Supreme Court’s proclamation [in Shelby County] that ‘history did not end in 1965’ ”) (citation and some internal quotation marks omitted).
In McClesky, the petitioner argued that Georgia’s modern death sentencing process was unconstitutional. 481 U.S. at 291, 107 S.Ct. 1756. Determining that McCle-sky had failed to establish that the state had acted with a discriminatory purpose, the Supreme Court concluded, inter alia, that state laws “in force during and just after the Civil War” were not probative of the legislature’s intent a century later. Id. at 298 n.20, 107 S.Ct. 1756. In the instant case, however, the district court did not rely solely on the more distant discriminatory practices by the state as evidence of the Texas Legislature’s discriminatory purpose in passing SB 14. Rather, the district court considered the various and recurring historical examples of state discrimination in Texas as evidence of the unceasing effort and desire to enact discriminatory procedures that would suppress the minority vote. As the district court explained, this history “exhibits a recalcitrance that has persisted over generations despite the repeated intervention of the federal government and its courts on behalf of minority citizens.” Veasey, 71 F.Supp.3d at 636. And, because of the Legislature’s repeated invocation of ballot integrity concerns to justify discriminatory practices, the district court concluded that “[tjhere has been a clear and disturbing pattern of discrimination in the name of combatting voter fraud in Texas.” Id. Unlike the kind of isolated and remote evidence the Supreme Court rejected in McClesky, evidence of a pervasive pattern of operation is relevant to determining whether the legislature’s current intent was discriminatory. While “history did not end in 1965,” Shelby Cty., 133 S.Ct. at 2628, neither legal precedent nor logic requires that we act as if it started in 1965 and close our eyes to the historical context surrounding challenged state action.[1] See W. Faulkner, Requiem for a Nun 80 (Vintage Books 1975) (1951) (“The past is never dead. It’s not even past.”).
Next, the majority opinion faults the district court for its reliance on evidence that, in the majority’s view, is “limited in [its] probative value,” including the relatively recent history of official discriminatory actions in a particular Texas county and post-enactment testimony by proponents of the bill. Maj. Op. at 231, 233-34. In that respect, the majority opinion explicitly engages in reweighing of the evidence. See, e.g., id. at 234 (“While probative in theory, even those (after-the-fact) stray statements made by a few individual legislators voting for SB 14 may not be the best indicia of the Texas Legislature’s intent.”). But determining the weight of the *322 evidence “is the special province of the trier of fact,” and this court may not reject the district court’s finding simply because it would have assigned different weight to certain evidence than did the district court. Inwood Labs., 456 U.S. at 856, 102 S.Ct. 2182.
Finally, the majority opinion criticizes the district court for relying on conjecture and conclusory accusations by the bill’s opponents in the Texas Legislature about the proponents’ motives. Maj. Op. at 232-34. However, in its analysis of the discriminatory purpose claim, the district court did not rely on conjecture or conclusory assertions; instead, the court relied in part on testimony by SB 14’s opponents as to particular facts and drew independent conclusions from those facts. See, e.g., Veasey, 71 F.Supp.3d at 702 (relying on proposed anti-immigration laws and concerns by Texas legislators about Hispanic immigrants carrying leprosy following census results showing gains in minority populations to conclude that “the 2011 legislative session was a racially charged environment”). The majority may not simply discard the district court’s findings by substituting its own assessment of the evidence for that of the district court. See Inwood Labs., 456 U.S. at 856, 102 S.Ct. 2182.
In sum, the majority opinion identifies legal error where there is none, disturbs valid factual findings by the proper fact-finder, and thereby exceeds this court’s authority under Rule 52(a). Because I believe we must affirm the district court’s finding that SB 14 was enacted with a discriminatory purpose, I respectfully dissent in part. However, given that that our court has resolved to reverse the discriminatory purpose finding and because of the significant evidence tending to show that SB 14 was enacted with a discriminatory purpose, I agree that this claim must be remanded to the district court for further proceedings in accordance with the judgment of the court.

. The majority opinion itself recognizes that this evidence is relevant and probative. In surveying the evidence that tends to support the district court’s discriminatoiy purpose finding, the majority opinion discusses evidence of Texas’ history of “justifying voter suppression efforts,” including the all-white primary, literacy and secret ballot requirements, poll tax, and re-registration and purging, "with the race-neutral reason of promoting ballot integrity.” Maj. Op. at 237. Thus, the majority opinion suggests that this evidence tends to show that the Legislature's justification of SB 14 as a measure to ensure ballot integrity was pretext. See id. at 236-37. But the majority opinion does not explain why this historical evidence, which may be used to prove pretext, cannot be used to support a more direct inference of discriminatory intent.